[Crim. No. 6215. Second Dist., Div. Two. June 25, 1959.]

THE PEOPLE, Respondent, v. ROLAND KEITH GIL-
LETTE et al., Defendants; GEORGE THOMAS
BEVINS, Appellant.

George Thomas Bevins, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

FOX, P. J.—Appellant Bevins and one Roland Keith Gillette were charged in Count II* of an information with robbing Thomas Wood of $4,418 on August 30, 1957. It was allleged that the defendants were armed with a deadly weapon. It was further alleged that Bevins had suffered four prior convictions, for each of which he had served time in a penitentiary. A jury found Bevins guilty of armed robbery in the first degree. On motion of the People, the first alleged prior conviction was stricken. Appellant admitted the other three priors. The court found appellant to be an habitual criminal and sentenced him to imprisonment in the state prison for the term prescribed by law. He has appealed from the judgment.

At approximately 8 :55 on the evening of August 30, 1957, appellant and Gillette (who is not involved in this appeal) entered the Safeway Store located at 311 West Pacific Coast Highway in Long Beach. Thomas E. Wood, head food clerk, was in the process of putting the money from the checkstands into the safe preparatory to closing the store at 9 o'clock. As he closed the safe and turned toward the checkstands a man approached him and put a gun in his side and told him to open the safe. Wood observed that the gun was a chrome-plated revolver. Upon Wood's opening the safe, appellant held out a bag and told him to put the money into it. Wood began to pull out the drawer which he had just placed in the safe, whereupon appellant said, "No, not that, I want the big money." Wood then started to put the drawer back, but appellant told him that he would take that also. Wood took

---

*Count I charged Gillette alone with robbery upon another occasion.

the drawer out again, removed the currency, and put it into appellant's bag. Wood then opened the combination side of the safe where there was a box about 6 by 8 inches containing currency in $100 bundles. Appellant told Wood that was what he wanted. Wood started to take the money out of the box, but appellant had him put the box and its contents into the sack. Appellant also told Wood he would take all the rolls of money, to wit, half dollars, quarters, dimes, nickels and pennies. Wood started to pick them up one at a time, but appellant told him to hurry; finally, appellant stepped in and took the rolls of money and put them into the bag himself, while Wood stood back. While this was going on, appellant was inquiring of Wood as to the time the police checked the market. Wood informed him that he did not know. After appellant had finished depositing the rolls of money in his sack, he took a crowbar and attempted to get into the key-side of the safe. He made two attempts to open this portion of it, remarking that it did not open very easily. Appellant stated to Wood: "My buddy is standing behind you. Don't try anything funny." At this point, appellant left the store. Wood observed that appellant was wearing a hat, but had no mask. Wood gave a description of appellant to the police when they arrived. Later the police showed Wood some 700 pictures. Appellant's picture, however, was not among them. Later they showed him six more pictures, from which group Wood picked out appellant's photograph.

On September 30th, Wood had occasion to see appellant in a police line-up. He identified appellant as the person who robbed him. Wood testified that he turned around and looked at appellant when they were at the safe; that they were right next to each other while the money was being put into the sack, and that he had no difficulty whatever in recognizing appellant at the police line-up on September 30th. Wood also identified him at the trial.

Appellant did not take the stand nor were any witnesses called on his behalf.

 The testimony of the victim, Wood, completely negates appellant's contention that the evidence is insufficient to establish his identification. In support of his contention he argues that Wood "was an unreliable witness" because of his fear of the gun. It was, of course, the function of the jury to evaluate the reliability of Wood's testimony, and their determination is binding on this court. The jury obviously believed him, and the fact that he was "very much

afraid" did not necessarily detract from his ability to remember the physical features of his assailant and to later identify him. In this connection, appellant also argues that Wood's testimony was insufficient to establish that his assailant had a gun. He bases this on the theory that Wood only had a momentary glimpse of the weapon. The following questions and answers on cross-examination reflect the fact that Wood had ample opportunity to see the gun:

"Q. Did you observe the gun that you referred to first, or did you feel it? A. I felt it first.

"Q. In other words, it was right up against your person? A. It was.

"Q. Did you look down at it at that time? A. Yes, I did."

Wood then proceeded to describe the gun.

It is not without significance that appellant did not take the stand to deny or explain any of Wood's testimony. ██ While the "failure to testify will not supply a lacuna in the prosecution's proof" (*People* v. *Ashley*, 42 Cal.2d 246, 268 [267 P.2d 271]), "[a] defendant's failure to take the stand 'to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.' (*People* v. *Adamson*, 27 Cal.2d 478, 489 [165 P.2d 3]"; [citations].) ██ As pointed out in the *Adamson* case, *supra*, "[t]he failure of the accused to testify becomes significant because of the presence of evidence that he might 'explain or . . . deny by his testimony' (Cal. Const., art. I, § 13), for it may be inferred that if he had an explanation he would have given it. . . ." (*People* v. *Chapman*, 156 Cal.App.2d 151, 157 [319 P.2d 8].)

██ The record discloses ample evidence to sustain appellant's conviction and the determination that he was armed with a deadly weapon under the principles of appellate review stated in *People* v. *Newland*, 15 Cal.2d 678, at page 681 [104 P.2d 778].

██ There is no merit in appellant's argument that he was denied a fair trial in violation of his constitutional rights because unrecorded conversations were held at the bench between his attorney, the deputy district attorney and the judge, out of the hearing of the jury. He argues that he was denied the "right to know what was transpiring or being said during his trial." This identical question was raised in *People*

v. *Baker,* 164 Cal.App.2d 99 [330 P.2d 240], and passed on adversely to the appellant's position. The court there pointed out that defendant's "own counsel took part in the conversation at the bench." Hence, the "record does not disclose a situation where in any practical sense appellant was not present at all times during the trial." (P. 111.) In *People* v. *Justice,* 167 Cal.App.2d 616 [334 P.2d 1031], the question is further explored. It is there pointed out (pp. 623-624) that since the jury did not hear the off-the-record discussions it could not possibly have been influenced by them. These cases demonstrate the futility of appellant's argument on this point.

█ Appellant vainly contends that the court failed to properly instruct the jury and left the jurors confused through inadequate instructions. In support of his position he points out that he was only involved in one count, namely, Count II, and that his codefendant, Gillette, was involved in both counts. He argues that the jury was not properly instructed that he was not involved in Count I. However, the record does not sustain his position. Instruction Number 16 concludes as follows: ". . . the defendant Bevins is charged in only one count—Count II." It is thus clear that this contention is not supported by the record.

Appellant charges the prosecutor with misconduct (1) in his argument to the jury; (2) in representing to the court that appellant had four prior felony convictions; (3) in drawing the court's attention to the applicability of the habitual criminal act; and (4) in presenting evidence that inferentially connected him with Count I. █ Appellant particularly complains that the prosecutor argued to the jury to the effect that if the defendant was not guilty then why did he not take the stand and deny his guilt. In *People* v. *Wilder,* 135 Cal.App.2d 742 [287 P.2d 854], the court considered this specific complaint. On pages 746-747 the court stated: "There can be no question but that by virtue of article I, section 13, of the California Constitution and Penal Code, section 1323, comment . . . by counsel concerning such failure by a defendant [to testify] is authorized, and the jury is entitled to consider such circumstances in its deliberations."

█ The incident relative to appellant's prior convictions occurred at the time appellant was before the court for sentence. The record does not bear out appellant's claim that the prosecutor represented that he had four prior convictions. The court observed that only the burglary and stolen property convictions could properly be considered on the

question of whether to invoke the habitual criminal act in this case. The court also observed that the Dyer Act prior conviction which appellant had admitted could not be considered in this connection (another alleged Dyer Act conviction had been previously dismissed on motion of the prosecution). The prosecutor agreed with the trial judge's analysis of the prior convictions and made no representation as claimed by appellant.

It is suggested, however, that the prosecutor's comment that this case called for application of the habitual criminal statute (Pen. Code, § 644) was in violation of section 1204 of the Penal Code, which provides, *inter alia*, that no representation can be made to the court in aggravation of the punishment except as provided in that and the preceding section. It cannot fairly be said that the prosecutor's statement was in aggravation of punishment and violative of section 1204. The reason for the prosecutor's comment was the fact that appellant had two prior convictions that were within the provisions of section 644 and that he had admitted said priors (in addition to one Dyer Act conviction). Thus, on the face of the record, the provisions of section 644 were applicable. The prosecutor was clearly at liberty to call the attention of the court to these priors for in so doing he alluded to nothing that was not in the record before the court.

The evidence which appellant claims inferentially connected him with Count I related to testimony involving the automobile which possibly was used in the robbery by appellant and Gillette in Count II and by Gillette alone in Count I. The testimony was allowed to stand subject to a later motion to strike if the district attorney failed to connect up such testimony. No such motion was ever made. It is clear from the foregoing that the prosecutor was not guilty of misconduct in any of these respects.

Appellant asserts that he was denied a fair trial on the question of his being armed during the robbery. When the jury had concluded its deliberations and returned to the courtroom the judge inquired: "Did you fill out the form of verdicts with regard to whether or not the parties were armed?" The foreman advised the court that the jury had not understood that this was necessary, but that they had in fact reached an agreement upon that issue. Thereupon the foreman signed a verdict finding that appellant was armed at the time he committed the robbery. The verdicts were then read to the jury, all of whom concurred in the correctness

of the verdicts as read and, upon being separately polled, all jurors answered in the affirmative. If there were any doubts in the minds of either appellant or his counsel as to the jury's finding they should have been made known before the jury was discharged. Obviously, the matter of signing the verdict as to appellant's being armed at the time of the commission of the offense related to a purely ministerial act and in no way prevented him from having a fair trial.

Appellant argues that his constitutional rights were violated by delay in his arraignment and that the court lost jurisdiction by extending the time for the pronouncement of sentence beyond the time allowed by law. Appellant was taken into custody on September 25, 1957, but was not arraigned until October 21st. He made no objection in the court below to the timeliness of his arraignment. The statement of the court in *People* v. *Newell*, 192 Cal. 659, 669 [221 P. 622], is here apposite: ". . . it does not appear it was claimed in the court below that the appellant was not seasonably arraigned, and this alone is a sufficient answer to the contention."

Appellant also claims that there was improper delay in his sentencing after conviction. On December 6, 1957, the date upon which the verdict was returned, the court in the exercise of its discretion (Pen. Code, § 1203) referred the matter to the probation officer and set the hearing for January 3, 1958. On the latter date counsel for appellant requested a continuance in order to get an application for probation on file. The appellant personally joined in this request for a continuance. While section 1191 of the Penal Code provides that judgment be pronounced within 21 days after the verdict, it further provides that the judge may extend this time ". . . until the probation officer's report is received and until any proceedings for granting or denying probation have been disposed of." It is thus apparent that these contentions are wholly lacking in substance.

Appellant contends that the court erred in adjudicating him an habitual criminal in that neither the Nebraska conviction for burglary nor the Iowa conviction for receiving stolen property were competent as a basis for this adjudication. Appellant claims that the Nebraska conviction was for second degree burglary, and that this is not mentioned in section 644 of our Penal Code and hence cannot be considered in adjudicating him an habitual criminal. There is nothing in the record to indicate that the conviction alleged was a second

degree burglary. The allegation of the prior conviction, which was admitted by appellant, is that he had been "convicted of the crime of burglary, a felony" and had "served a term of imprisonment therefor in the state prison." When a defendant has admitted a prior conviction, there is no requirement that the prosecution produce evidence of the nature of the conviction. (*People* v. *Herod,* 112 Cal.App.2d 764, 766 [247 P.2d 127] ; *People* v. *McConnell,* 86 Cal.App.2d 578, 580 [195 P.2d 34].) This question was considered in *People* v. *Lyle,* 21 Cal.App.2d 132 [68 P.2d 378]. The court there pointed out (p. 137) ". . . the information contained a full and complete description of the prior offenses, the courts wherein judgments of conviction were pronounced, the dates of said judgments, and the fact that in each instance as punishment therefor appellant served a term in a designated penal institution. Appellant expressly admitted the three prior convictions of felony which were thus described. Under these circumstances if appellant considered that evidence was required to acquaint the trial court with the nature of the previous crimes which he had committed the duty was imposed upon him then to submit such evidence. This he failed to do and it is now too late to complain for the first time on this appeal that evidence in which he alone was interested and which he should have presented was not submitted."

Relying on *People* v. *Morton,* 41 Cal.2d 536 [261 P.2d 523], appellant points out that before his burglary conviction in Nebraska could properly be considered in adjudging him an habitual criminal the crime of burglary in Nebraska must have substantially the same elements as the crime of burglary in California. He argues that the elements of the crime are not the same in the two jurisdictions. But a comparison of the statutes defining burglary in the two states clearly refutes his argument. What has been said about appellant's burglary conviction in Nebraska applies generally to his conviction in Iowa for receiving stolen property. There can be no doubt that the trial court was entitled to take both of these admitted felonies into account in adjudging appellant an habitual criminal under Penal Code, section 644.

 Appellant makes the unmeritorious contention that "the judgment did not include the adjudication of habitual criminal." The complete answer to this contention is found in the following excerpt from the reporter's transcript:

"THE COURT: . . . I am impressed with the fact that it is just such a case as this that the legislature had in contempla-

tion in passing the habitual criminal statute, and I think it is applicable in this case. Therefore, I will find that the defendant——

"THE DEFENDANT: Don't make me a habitual criminal.

"THE COURT: I find the defendant is a habitual criminal and is to be sentenced to the state prison." Further, the minutes of the trial court in which the judgment is recorded contain the following: "The court finds the defendant is an habitual criminal."

In view of appellant's admission of the alleged prior convictions there is patently no basis for his contention that the jury should have passed upon such issue.

Appellant asserts that he "was never re-arraigned." The minutes of the court state that "Defendant Bevins withdraws his denial of the second, third and fourth allegations of prior convictions and admits the said allegations." There is nothing in the record which indicates that appellant was not properly arraigned.

Appellant contends that his constitutional rights have been violated by reason of the fact that he has not been represented by counsel since the "verdict was returned." The record discloses that appellant was represented by counsel through all the proceedings of the trial court including the probation hearing and pronouncement of judgment. He apparently refers to the refusal of this court, upon his application, to appoint counsel to represent him on this appeal. After an examination of the record, this court, on August 13, 1958, entered the following minute order: "It appearing that there is no substantial legal question warranting appellate review herein, defendant's request for appointment of counsel is denied." This procedure and order is in harmony with the later declaration of policy in such matters by the Supreme Court in *People* v. *Hyde*, 51 Cal.2d 152, 154 [331 P.2d 42].

It is apparent from the foregoing that there is no merit whatever in any of appellant's contentions.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied July 13, 1959, and appellant's petition for a hearing by the Supreme Court was denied August 19, 1959.