Neil O. Walter of Wilson & Walter, Bonners Ferry, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

609 P.2d 642

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Anthony COUTTS, aka Gerald Ralph Anthony Cootz, aka William Lee Schmidt, aka Billy Lee, Defendant-Appellant.**

No. 12874.

Supreme Court of Idaho.

April 10, 1980.

McFADDEN, Justice.

Following a plea of guilty before the district court, defendant-appellant Gerald Anthony Coutts was found guilty of a charge of grand larceny (theft of a pickup truck) and was sentenced to an indeterminate term of fourteen years imprisonment. He appealed from the judgment of conviction.

On appeal Coutts contends his guilty plea was not voluntary and should not have been accepted by the courts. However, it is the conclusion of this court that the record does not sustain this contention. The propriety of acceptance of a guilty plea is governed by I.C.R. 11[1] and *State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976).

In *State v. Colyer*, this court stated:

"Whether a plea is voluntary and understood entails inquiry into three areas: (1) whether the defendant's plea was *voluntary* in the sense that he understood the nature of the charges and was *not coerced*; (2) whether the defendant *knowingly* and *intelligently waived* his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) *whether the defendant understood the consequences of pleading guilty.* It is clear that the voluntariness of a guilty plea can be determined by considering all of the relevant surrounding circumstances contained in the record. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Schneckloth v. Bustamonte*, 412 U.S. 218, 238 n. 25, 93 S.Ct. 2041, 36 L.Ed. 854 (1973)." 98 Idaho at 34, 557 P.2d at 628 (Emphasis added.)

In this case, the district judge who handled this stage of the proceedings first explained to the defendant the nature and circumstances of the charge against him, the consequences of his guilty plea, including his waiver of the right to a speedy trial before a jury, the right to confront witnesses called against him, and the right to present evidence. He was advised that in the event of a trial he would not have to take the witness stand or give any testimony unless he chose to do so, of his right to an attorney, and that the State must prove

to the jury his guilt beyond a reasonable doubt. The trial court advised him of the maximum sentence that could be imposed, and that if he had been previously convicted of a crime, especially a felony, it would weigh heavily against him. After that explanation, Coutts entered his plea of guilty. The trial court then further inquired as to the reason he wished to plead guilty. After still further inquiry the court advised him that it wanted to be certain he knew what he was doing, and Coutts replied that he had been in prison and knew what he was doing.

Only after this exhaustive inquiry was the court fully satisfied that it should accept the defendant's plea of guilty. The record thus clearly shows that the district court meticulously explained to Coutts the nature and circumstances of the charge and the consequences of his guilty plea; it also clearly appears that Coutts actually understood the judge's explanation.

■ Coutts argues, however, that the plea was not voluntary, in light of his statements at arraignment and at the sentencing hearing that he was subjected to extreme conditions of incarceration, that the confession which was the heart of the state's case was the product of a deal, and that he was dissatisfied with his attorney.

Coutts claims that during his incarceration at the Boundary County jail he was "denied cigarettes," and that he was placed in a cell which had no toilet and no running water. The record also indicates that Coutts had threatened an escape attempt and had physically threatened a guard, and that because of this he was forced to lie on his stomach and to place his hands behind his back for handcuffing prior to being removed from his cell for arraignment.

But Mr. Coutts' attorney, who also represents him on appeal, stated at the arraign-

---

1. Rule 11. Pleas.—A defendant may plead guilty or not guilty. The court may refuse to accept a plea of guilty if it determines that the plea is not made voluntarily with understanding of the nature of the charge and the consequences of the plea. If the defendant refuses to plead or if the court refuses to accept

a plea of guilty or if the defendant corporation fails to appear, the court shall enter a plea of not guilty.

A verbatim record of the proceedings shall be made by stenographic means or recording device.

ment that while the conditions at the jail were not optimal,

"this is not the reason for his plea. He is not pleading so he can be moved to another prison or the plea has not been coerced. [sic] I think he is objecting to the conditions here and his treatment. But I think from my meeting with him he is aware of what he is doing [by pleading guilty]."

We hold that the record supports the attorney's conclusion.

Nor did Coutts' allegation that his confession may have been part of a deal compel the judge to refuse to accept his guilty plea. The place to challenge the voluntariness of the confession was, of course, at trial. Such challenges are by no means unusual and are often successful. In addition, at both the arraignment and the sentencing hearing before another district judge, Coutts was repeatedly offered the opportunity to change his plea and declined to do so.

Finally, Coutts cannot successfully ground his claim of coercion on his dissatisfaction with his attorney. The clear indication from the arraignment transcript was that Coutts did not feel that he was poorly represented, but that his attorney left something to be desired in the "lawyer-client" relationship. That is, he thought that his counsellor was a "good attorney," and his dissatisfaction was "just personal."

It is the conclusion of this court that the record reflects that Coutts' guilty plea was voluntary and that he understood its consequences, and it was not error for the district court to accept it.

█ Coutts also contends that certain unsworn remarks made by the prosecutor at the sentencing hearing were so inflammatory as to taint that hearing beyond the limit of due process.

At that hearing the court had before it the presentence report previously ordered. The court determined that Coutts had received a copy of the report in sufficient time to examine it and then offered him an opportunity to comment on any portions of it he felt were incorrect. Coutts took advantage of this opportunity and agreed that the general account of his past history was accurate and explained certain other portions of the report. The trial court then inquired whether the plea of guilty had in any manner been forced or compelled, and advised Coutts that if he had entered a plea of guilty which he did not wish to enter the court could and would set it aside and afford an opportunity for a full jury trial. The defendant declined this offer and advised the court there was no reason sentence should not be imposed.

The prosecutor then made a statement in the course of which he stated in essence that Coutts had failed to mention several items

"for example the car which he was in control of was allegedly a stolen vehicle out of Texas . . . . Allegedly his wife, just through three independent sources that I have confirmed and that I believe to be viable sources, has been beaten, shot ___ "MR. SHELTON [counsel for defendant]: Your honor, I object unless there is an opportunity for the defendant to ___

"THE COURT: He will have that opportunity.

"MR. DAY: [prosecutor] ___ has been beaten and shot by Mr. Cootz. When she was in town she was in mortal fear of Mr. Cootz."

Appellant contends on this appeal that the trial court failed to follow the provisions of I.C. §§ 19–2515(a) and 19–2516.

"19–2515. Inquiry into mitigating or aggravating circumstances—(a) After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral or written suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct."

"19–2516. Inquiry into circumstances— Examination of witnesses.—The circumstances must be presented by the testimo-

ny of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken by a magistrate of the county, out of court, upon such notice to the adverse party as the court may direct. No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section."

Appellant has argued that the prosecutor's reference to the alleged incidents was a presentation of unsworn evidence contrary to these statutory provisions.

In response to appellant's contentions in this regard, other states have dealt with similar contentions, and two lines of authority have developed. In *People v. Neal*, 97 Cal.App.2d 668, 218 P.2d 556 (1950), and *State v. Willms*, 117 N.W.2d 84 (N.D.1962) those courts have required a strict compliance with the particular states' statutory schemes. The other line of authority, which holds that in the absence of a formal request for a hearing of evidence by actual testimony, the court may on a sentencing hearing hear the presentation in a more informal manner. *See Barber v. Gladden*, 228 Or. 140, 363 P.2d 771 (1961), interpreting O.R.S. §§ 137.080 and .090, which are essentially identical to I.C. §§ 19–2515(a) and 19–2516. *Williams v. State*, 321 P.2d 990 (Okl.1958) aff'd 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *People v. Carter*, 398 Ill. 336, 75 N.E.2d 861 (1947) cert. denied 333 U.S. 882, 68 S.Ct. 908, 92 L.Ed. 1157 (1948).

In *Coffman v. Gladden*, 229 Or. 366, 366 P.2d 171 (Ore.1961), the court reaffirmed *Barber v. Gladden, supra*, and its interpretation of the statutes to require the taking of evidence only upon formal request. In the *Coffman* case, the court stated in language appropriate here,

"To hold otherwise would be little short of ridiculous. It would require the trial court when hearing the most perfunctory facts to proceed only by the formal proc-ess of swearing witnesses. The legislature would never have intended such a useless formality. The trial courts were granted a sensible discretion. Or that the formal procedure should be mandatory only when demanded by either party. [sic] Obviously, if either party requests formal hearing or the facts themselves suggest sworn testimony, the trial courts should and will proceed by that method." 366 P.2d at 173.

The validity of this statement from the Oregon court is buttressed in Idaho by the enactment in 1947 of I.C. § 20–220, which provides for the written report of investigation by a parole and probation officer prior to sentencing of a defendant. Enactment of this statute of necessity relaxed the strict requirements of I.C. § 19–2516, otherwise there would be no point in submitting a written report to the court, for the material therein would have had to be submitted by the testimony of witnesses. Moreover, this court, by I.C.R. 37, provided detailed standards and procedures governing presentence investigations and reports amplifying what was authorized by I.C. § 20–220. In order to maintain a viable system of sentencing hearings, under ordinary circumstances, such hearings normally need not be encumbered with all the procedural requirements which attend a resolution of the issue of guilt or innocence. The court therefore holds that *in the absence of an explicit request for the formal hearing contemplated by I.C. § 19–2516*, the court may reach its sentencing decision by receiving the unsworn formal statements presented by both sides, together with the presentence report and arguments of the respective counsel.

In this proceeding appellant did not present any request to the trial court for a formal hearing as required by I.C. § 19–2516, but participated without objection in the more informal type of hearing conducted by the sentencing judge. After the complained of statements were made by the prosecutor, appellant's counsel responded to these statements advising the court that the appellant would deny them, and continued by arguing that the court should consider appellant's age.

The court then proceeded to render its sentence. He stated that he had studied the presentence report with some care and had reviewed the nature and repeated history of prior offenses. From this record we find no error on the part of the trial court, in either accepting the plea of guilty, or in imposing the sentence he did.

Judgment of conviction and sentence affirmed.

DONALDSON, C. J., BAKES, J., and SCOGGIN, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

I cannot agree that the following statement by the prosecuting attorney at the sentencing hearing did not constitute reversible error:

> MR. DAY [prosecutor]: "Mr. Cootz, in explaining his reasons for doing stuff today has failed to mention quite a bit that I believe should have been mentioned, for example the car that he was in control of was allegedly a stolen vehicle out of Texas, Amarillo, Texas. Allegedly his wife, just through three independent sources that I have confirmed and I believe to be viable sources, has been beaten, shot . . by Mr. Cootz. When she was in town she was in mortal fear of Mr. Cootz. . . Also as far as the escape of the jail he forgot to tell us about the knives he had constructed and were in his possession."

To my mind this uncorroborated statement constitutes reversible error because it violates the provisions in I.C. §§ 19–2515 and 2516 for a formal sentencing hearing and because it violates the safeguards afforded the defendant which limit the outside information a trial court may consider for sentencing purposes. I would distinguish this statement by the prosecuting attorney both from the presentence report, which provides the defendant with safeguards unavailable here, and from the defendant's right of allocution and the state's "right" to reply thereto.

To properly understand this issue, it is necessary to distinguish between (1) the formal sentencing hearing required under I.C. §§ 19–2515 and 2516 and (2) the defendant's right of allocution, *i. e.*, his right to be asked whether any reason exists why judgment should not be pronounced against him, and to explain mitigating factors to the court. This latter right, which is currently embodied in I.C. § 19–2510[1] and I.C.R. 32(a)(1),[2] was established as a part of the Idaho law in the Criminal Practice Act of 1864, 1864 Idaho Sess.Laws Ch. 2 § 443.

I.C. §§ 19–2515 and 2516, on the other hand, although they have survived to the present day literally without amendment,[3] were not enacted until 1887.

To my mind, the legislature enacted I.C. § 19–2515 to establish the basic right of either of the parties to a criminal action to request and be provided with a mitigation or aggravation hearing,[4] while correspondingly enacting § 19–2516 to set forth the procedure to be followed in such a hearing. But this in no way affected the defendant's basic right of allocution. Although the defendant has been granted the right of allocution by statute, there is no similar provision for the State.[5] The only means by which the State is authorized to present

---

1. I.C. § 19–2510:
   "When the defendant appears for judgment he . . . must be asked whether he has *any legal cause to show why* judgment should not be pronounced against him."

2. I.C.R. 32(a)(1):
   "Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally to ask him if he wishes to make a statement in his own behalf and to

present any information in mitigation of punishment."

3. I.C. § 19–2516 has been amended with regard to the death penalty.

4. The trial court on its own motion may also order a formal hearing under I.C. §§ 19–2515 and 2516. *See, e. g., State v. Weise*, 75 Idaho 404, 273 P.2d 97 (1954).

5. *See, e. g.*, Fed.R.Crim.P. 32(a)(1) for an example of such a statutory provision.

evidence[6] in the sentencing hearing is under the provisions of I.C. §§ 19–2515 and 2516. In spite of this, however, apparently a practice has evolved of allowing the State to respond to the defendant's statement.

Other states have taken language similar to Idaho's at face value and have held that whenever evidence is presented in mitigation or aggravation of punishment, it must be presented by the testimony of witnesses examined in open court. In *People v. Neal*, 97 Cal.App.2d 668, 218 P.2d 556 (1950), for instance, the prosecutor referred to the defendant's prior criminal record in an unsworn statement at the sentencing hearing. The court, relying on Cal.Pen.Code § 1204, which was identical to I.C. § 19–2516 at that time, remanded for resentencing, stating the following:

> "The statement of the district attorney, wholly unsupported by any evidence, was highly inflammatory and prejudicial. If any of the matters referred to by the district attorney was true, it should have been presented to the court in the form of evidence. The statute demands that the duty of determining the question of aggravation or mitigation of punishment be performed with scrupulous fairness to the defendant." 218 P.2d at 561.

In *State v. Willms*, 117 N.W.2d 84 (N.D. 1962), the North Dakota Supreme Court, interpreting N.D.Cent.Code § 29–26–18, which is similar to I.C. § 19–2516, dealt with a defendant convicted of passing a bad check. At sentencing, the prosecutor stated that the defendant had passed such checks on two earlier occasions the same day. The court held as follows:

> "Where the defendant objects to presentation of such circumstances by the hearsay statement of the State's Attorney, giving the information in any way other than as provided by statute, after such objection, would be error." 117 N.W.2d at 88.

The court determined that in *Willms'* case the introduction of the testimony was harmless error, but nonetheless the court made it clear that failure to follow the strict requirements of the equivalent of I.C. § 19–2516 was error.

The A.B.A. project on Standards for the Administration of Criminal Justice is in accord:

> "Where the need for further evidence has not been eliminated by a presentence conference (section 4.5[b]), evidence offered by the parties on the sentencing issue should be presented in open court with full rights of confrontation, cross-examination and representation by counsel." A.B.A. Standards, Sentencing Alternatives and Procedures § 5.4(b) (1968).

The majority sets forth two reasons for holding that I.C. § 19–2516 is not applicable absent a formal request:[7] the enactment of

---

**6.** This does not mean that the prosecutor cannot refer to facts in the record in replying to the defendant's statement, however. *See ante.*

**7.** The Idaho Judges Sentencing Manual § 6.3 (1976) states:

> "If either the prosecution or the defendant insist, the court may not receive any evidence in violation of this section of the code [19–2516]. That means that all evidence must be in the form of live testimony with an opportunity for cross examination, except where a deposition is permitted in accordance with the statute, or unless the parties waive the requirements of *Section 19–2516.* In order to make a proper record, *the court should ask the parties specifically if they are willing to waive the requirements of this statute,* if evidence other than that permitted in *Section 19–2516* is presented." (Emphasis added.)

I.C.R. 32(a) states that "[b]efore imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and *shall address the defendant personally to ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.*" (Emphasis added.)

In the present case the only statements made by the trial judge to the defendant in this regard were: "Is there anything in the presentence report that you would like to explain, deny, refute or make any comment about?" and "You may . . . add anything that you wish to in the way of a statement . . . to explain why you did the act . . . or any other circumstances that you feel would constitute mitigation." If the Court insists on holding that a formal request is needed before § 19–2516 comes into play, then at the least the trial court should be required to inform the defendant of the existence of the protections of that statute.

I.C. § 20–220, providing for presentence reports, has weakened the literal language of 19–2516, otherwise the material in a presentence report would have to be submitted through the testimony of witnesses and (2) the legislature could never have intended the useless formality of requiring the swearing of witnesses even for hearing the most perfunctory facts.

First, the statements made by the prosecutor below were not "the most perfunctory facts." Secondly, the statutory language makes no exception for "perfunctory facts." If it is to be proper that the trial court hear some facts relevant to aggravation of punishment without the formality of I.C. § 19–2516, that determination is for the legislature, not this Court.[8] Substantive rights are involved, not a mere procedural course. Finally, in light of the apparent practice that has evolved, I would not preclude the State from commenting upon matters *in the record* or upon facts that would not go to aggravation of punishment, and this should allow all the "perfunctory facts" to be presented without the necessity of sworn testimony.

As to the argument that by providing for presentence reports in § 20–220, the legislature weakened § 19–2516, it is a basic principle that statutes are to be construed in harmony with each other whenever possible, and here § 19–2516 can be read in conjunction with § 20–220 without further eroding the basic language and concept of § 19–2516. The rationale behind acceptance of the presentence report was set forth in *Williams v. New York*, 337 U.S. 241, 249–50, 69 S.Ct. 1079, 1084, 93 L.Ed. 1337 (1949), as follows:

"Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information. To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life." (Footnotes omitted.)

The provision for presentence reports reflects a legislative determination that in many instances individualized sentencing can be better effectuated through a full report by a trained investigator in addition to or absent both sides presenting testimony in open court.

This does not mean, however, that the provisions of § 19–2516 are now of little force and effect. Rather, the legislature determined that it was advisable to supplement the information available to the trial court for sentencing by establishing presentence reports. The legislature did not decide that it was necessary to supplement the information provided the trial court by allowing the prosecuting attorney to say anything he desired at the sentencing hearing. Just because the legislature has provided an exception to the formal requirements of § 19–2516, it does not follow that § 19–2516 must now be riddled with exceptions by this Court.

As to the other exception to the requirements of § 19–2516, the defendant's right

8. In North Dakota, for instance, N.D.Cent.Code § 29–26–18, after stating that "[c]ircumstances in aggravation or mitigation of punishment must be presented by testimony of witnesses examined in open court," makes an exception (1) for the criminal record of the defendant furnished by the F.B.I. or the state superintendent of criminal identification, (2) for reports of the state parole officer and (3) for results of psychological testing and psychiatric examination.

of allocution, "[i]t has been suggested that giving the defendant this final opportunity to speak before sentencing is pronounced may have a therapeutic effect," Idaho Judges Sentencing Manual § 6.4 (1977), rather than helping the trial court exercise a reasoned discretion. The State has no need for therapy when a sentence is being imposed, however, and, just as the legislature has not enacted any provision allowing the State a right of allocution, so there is no reason for judicially allowing the prosecutor a right to say anything he wishes at sentencing.[9]

Furthermore, not only does allowing the State an unbridled right of allocution serve no useful purpose in aid of individualized sentencing, it also violates the defendant's basic rights. It must be remembered that the defendant has a substantial interest in his sentencing,[10] an interest that must be balanced against the necessity of allowing the trial court a large degree of latitude regarding the information it may consider for purposes of sentencing. This balance has been achieved by limiting the latitude of the trial court by three safeguards, re-gardless of the provisions of § 19–2516: " '(1) that the defendant be afforded a full opportunity to present favorable evidence; (2) that the defendant be afforded a reasonable opportunity to examine all the materials contained in the pre-sentence report; (3) that the defendant be afforded a full opportunity to explain and rebut adverse evidence.' " *State v. Yoelin*, 94 Idaho 791, 794, 498 P.2d 1264, 1267 (1972), quoting *State v. Ballard*, 93 Idaho 355, 360, 461 P.2d 250, 255 (1969).

These safeguards are present when the trial court considers the presentence report because the defendant and his attorney are given "a full opportunity to examine the presentence investigation report so that, if the defendant desires, he may explain and defend adverse matters therein." I.C.R. 32(g). Where a presentence report might "influence the court in arriving at a sentence, full disclosure of the contents of such report must be made prior to any hearing on the sentence . . . ." *State v. Rolfe*, 92 Idaho 467, 473, 444 P.2d 428, 434 (1968).[11] Moreover, the presentence report is prepared by an independent impartial investigator

---

**9.** If the defendant perjures himself under oath at a mitigation hearing, he can be charged with perjury. *State v. Martinez*, 89 Idaho 232, 404 P.2d 573 (1965). There are no similar controls over *unsworn* statements by the defendant or the prosecutor, and, although there is a rational reason for giving the defendant this opportunity to speak freely without threat of sanctions, there is no rational reason for giving this same right to the prosecutor. Although not at all likely, a prosecutor who allowed himself to speak whereof he knew not, or falsely, should he also have allowed himself to be sworn as a witness, would equally as did *Martinez*, subject himself to a charge of perjury.

**10.** The United States Supreme Court in *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–1205, 51 L.Ed.2d 393 (1977), stated:
   "[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. . . . The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process."
The court of appeals noted in *United States v. Bass*, 535 F.2d 110, 118 (D.C.Cir.1976) that "with increasing frequency, relief has been provided when the sentencing process created a significant *possibility* that misinformation infected the decision . . . ."

**11.** In considering the extent to which a defendant must be able to test adverse evidence by actual cross-examination, this Court stated the following:
   "If the court hears hostile witnesses, the defendant must be allowed to cross-examine them. On the other hand, the pre-sentence investigation report compiled by a probation or parole officer will contain a great deal of hearsay information, and the court need not allow the defendant to cross-examine all of the sources of such information. It apparently has been thought sufficient that the defendant be permitted to examine the report and to show by means other than cross-examination the unreliability of adverse information or to counterbalance such information by providing affirmative indications of good character." (Footnotes omitted.) *State v. Moore*, 93 Idaho 14, 17, 454 P.2d 51, 54 (1969).
Here the defendant had no opportunity to counterbalance the information put forward by the prosecuting attorney because he had no prior knowledge that the information would be brought out.

who has "not been trained to prosecute but to aid offenders." *Williams v. New York*, 337 U.S. 241, 249, 69 S.Ct. 1079, 1084, 93 L.Ed. 1337 (1949). Thus the presentence report properly balances the need to allow the trial court to consider a wide range of information in order to exercise a reasoned discretion in sentencing with the need to protect the defendant from irrational sentencing based on false information.

. This balance is also maintained when evidence is presented in open court through sworn testimony, but it is not maintained where in effect there is a swearing contest between the prosecuting attorney and the defendant. As noted by defendant in his brief, "the Appellant was confronted with a situation where it was his word against the Prosecutor—the word of a handcuffed admitted felon against the word of a duly elected public official in courtroom attire." The defendant had no notice that these charges would be made against him, no opportunity to examine the materials that would be used against him and thus no opportunity to prepare an adequate rebuttal to them. When the defendant went in for his sentencing, he had been given an opportunity to review the presentence report and prepare any reply he wished to make. He also could expect the prosecutor to put on sworn witnesses, witnesses he could cross-examine. Instead the prosecutor chose to present his own unsubstantiated information to the court. As stated in *United States v. Fatico*, 579 F.2d 707, 713 (2d Cir. 1978), with regard to sentencing procedures, "the reliability of evidence that is difficult to challenge must be ensured through cross-examination or otherwise, by demanding certain guarantees of reliability." There were absolutely no safeguards in the present case to protect the defendant from the uncorroborated charges levied against him by the prosecuting attorney.

While I would agree that at sentencing the prosecutor can comment on the evidence which is properly before the court, *see, e. g., People v. Vatelli*, 15 Cal.App.3d 54, 92 Cal.Rptr. 763, 769 (1971); *State v. Gillette*, 171 Cal.App.2d 497, 341 P.2d 398, 402 (1959), the prosecutor's statements in this case went far beyond comment. In alleging car thefts, batteries and attempted homicide, none of which appear to have been in the record, the prosecutor was presenting extensive and damaging hearsay. And the fact that the prosecutor's statements were made in response to the defendant's exercise of his right of allocution does not save them. If defendant were guilty of car theft, or if he had been charged with car theft, such convictions or charges should have appeared in the presentence report. I.C.R. 32(b)(2). The statements regarding defendant's alleged treatment of his wife could have been presented to the presentence investigator and included in the report, if verified, under I.C.R. 32(b)(3) or (9). If the facts alleged by the prosecutor were true, they were pertinent to the sentencing decision and should have been considered by the court. But the duty to be scrupulously fair to the defendant precludes their presentation to the court in an unsworn statement by the prosecutor.

For the trial court to exercise a reasoned discretion in sentencing the individual offender, it is necessary that he be provided with information about that offender. The proper procedure for doing this is through a presentence report and the sworn testimony of any witnesses the prosecuting attorney may wish to use to supplement whatever information is before the court. The defendant also has the right to put on evidence, but beyond that he has a right to a final statement before sentencing. The State can comment on evidence before the court in replying to that statement, but the State has no inherent right to bring forth unsupported charges in response to the defendant's right of allocution.

I reject out of hand the State's argument that the prosecutor's comments, if error at all, were harmless error. On their face, the comments were extremely prejudicial, and the defendant was sentenced to the maximum term of imprisonment. It ought not be assumed that the prosecutor's inflammatory and improper comments did not contribute to the extreme sentence. The defendant's sentence should be set aside.

The voluntariness of the defendant's guilty plea is more troublesome, and I do not find fault with the Court's opinion in that regard, other than that, unlike the other members of the Court, I have spent some time around that county jail[12] and I have no trouble in understanding how the defendant is able to say that the fact and manner of his incarceration, and the length thereof, induced him to "voluntarily" plead guilty, even in the face of the close examination of the trial court. At the acceptance of plea hearing and at sentencing Coutts was time after time asked if he would like to withdraw his guilty plea. He was not advised, however, that should he do so and change his plea to not guilty, he could await trial elsewhere, and in particular, at the regional jail at Wallace, in recent years modernized at considerable expense. Where the cause should be reversed for error at the sentencing, the interests of justice require that the defendant also be allowed to withdraw his guilty plea should he yet desire to do so.

Attention should also be directed to the Court's opinion (and my dissenting opinion) in *State v. Griffiths,* No. 12367, 101 Idaho 163, 610 P.2d 522 (1980), wherein one of the principal issues discussed is prosecutorial misconduct in commenting to a jury on matters not in evidence and improperly urging the jury to draw conclusions therefrom. Both the opinion of the Court and the dissenting opinion in *Griffiths* recognize that state courts are as bound by the federal constitution as by their own state constitutions to protect individual freedoms against such a denial of due process. And it is now firmly understood that the rule of *Chapman v. State of California,* 386 U.S. 125, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) applies to state appellate courts called upon to determine whether federal constitutional error has deprived a defendant of his right to a fair trial—the test being that the state is bound to demonstrate to the appellate court beyond a reasonable doubt that the error was harmless.

It would seem to me that the *Chapman* rule should also have application to sentencing hearings and, in fact, I would say especially to sentencing hearings, having in

---

**12.** Recently an order issued out of the U.S. District Court for the District of Idaho condemning the conditions at the Kootenai County Jail, and giving the commissioners of that county directions that prisoners not be kept therein longer than 48 hours. Among the findings and conclusions of that court were the following:

> "The toilets, showers, and general conditions of the cells of the Kootenai County Jail are unsanitary and inadequate for the confinement of prisoners for other than very short periods of time.
>
> .    .    .    .    .
>
> "The conditions of confinement for pretrial detainees in the Kootenai County Jail are substantially worse than conditions of confinement for convicted felons confined in the Idaho State Penitentiary.
>
> "The totality of conditions in the Kootenai County Jail render the facilities constitutionally unacceptable for confinement. Such confinement constitutes cruel and unusual punishment in violation of prisoners' rights protected by the Eighth and Fourteenth Amendments to the United States Constitution.
>
> "Confining pretrial detainees in the Kootenai County Jail in conditions substantially worse than the conditions of confinement for convicted felons in the Idaho State Penitentiary, and in the conditions found by the Court, violates pretrial detainees' rights to due process of law and equal protection which are guaranteed by the Fourteenth Amendment to the United States Constitution."

In the present case, the State made no attempt to rebut the defendant's statements about the conditions at the jail. The following statement by defendant's attorney sets forth those conditions:

> Mr. Shelton: "Your Honor, I believe that he told me he has not been afforded the same rights as some of the other prisoners in the jail, and, for example, he said he has been locked up in a central portion of the jail for almost two weeks now and not been permitted to take a shower and locked in a cell each night that does not have running water or toilet facilities. He has been denied cigarettes. For the time he has been in this central portion he hasn't been allowed to write letters or have writing materials, and obviously there is an antagonism over there between Mr. Cootz and the authorities and I realize the Sheriff's duty to maintain Mr. Cootz incarceration and it's an old jail and it doesn't have very modern facilities, but I don't know that they have reached a happy medium over there and I think Mr. Cootz is on the short end."

mind that by far the bulk of inmates serving time in the national, state and county prisons or jails arrived there by convictions entered on guilty pleas—rather than jury verdicts. Where a defendant enters a guilty plea, which is accepted, from that point on the punishment which he will be dealt is entirely up to one single individual, the sentencing judge. Such being so, it should not seem reasonable that we uphold a sentencing hearing which is lacking in due process. What is so improperly impermissible for the ears of a jury ought to be equally impermissible for the ears of a judge, upon whom lies the obligation of imposing a defendant's punishment.

To my mind the Court's opinion in this case must be read as sanctioning the denial of the due process to which all defendants are entitled. Our statutes as written, and as they should be read, have long embodied proper concepts of due process at sentencing hearings—until today. While a defendant can waive constitutional rights, and can agree to an informal hearing, an insurmountable principle of law is that such a waiver may not merely be presumed.

Nor do I think that statutes providing for presentence investigation and report can or do waive a defendant's right to due process at his sentencing hearing. A defendant in Idaho has a right to ask for leniency of penalty, and equally has a right to ask for probation and rehabilitation in that manner. It is in those instances that this Court has stated that presentence investigations must be made. But, the Court has also held that where the trial court has ruled out any chance of probation, a presentence report is not required. A presentence report serves the purpose of providing the court with a multitude of factors in the defendant's history, and is aimed at enabling the court to evaluate the defendant's probabilities of becoming rehabilitated through a supervised probation—rather than by being incarcerated, where institutionalizing rather than rehabilitating is the main factor.

A presentence report will contain much hearsay, but an opportunity is provided a defendant to examine it and raise a challenge to portions which are thought to be incorrect. That the court may request and consider a presentence report should not serve, however, as an excuse for condoning the type of inflammatory hearsay remarks which the prosecution heaped upon a defendant exercising his right of allocution, and objection thereto being made, or at least attempted.