684 P.2d 1013

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Victor Wayne CAMP, Defendant-Appellant.**

**No. 14035.**

Court of Appeals of Idaho.

July 31, 1984.

Stephen S. Hart, Idaho Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Steven W. Berenter, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Victor Camp pled guilty to two felony charges of false use of a credit card, I.C. § 18–3113.[1] He was sentenced to an indeterminate term not to exceed five years on each offense. The district court ordered the second sentence to be served consecutively to the first five-year sentence. Victor appeals from the first sentence only, contending that this sentence was an abuse of the court's sentencing discretion. We affirm.

The record in this case shows that one Michael Fallert disappeared after leaving his sister's home in California in early June, 1980. Subsequently, Fallert's pickup truck was found abandoned in a campground in Teton County, Idaho. Beginning on June 9, 1980, a number of purchases and credit charges were made using credit cards issued to Fallert. The Camp brothers were arrested in Seattle, Washington about a month later on criminal complaints alleging fraudulent use of Fallert's credit cards. They were returned to Idaho and Victor subsequently pled guilty to two offenses relating to purchases in Idaho Falls. At his sentencing hearing, Victor advised the court that his brother Eugene had told him that he, Eugene, had taken the credit cards from a truck in Driggs, Teton County, Idaho.

Victor contends his sentence on the first charge was an abuse of discretion for two reasons. First, he asserts the prosecutor made certain statements during the sentencing hearing which amounted to misconduct. He argues that these remarks influ-

---

1. I.C. §§ 18–3113 and 18–3119, under which Victor Camp pled guilty and was sentenced on December 16, 1980, were later repealed and replaced by a new act relating to the use of "financial transaction cards." 1981 Idaho Sess. Laws, ch. 164, p. 288, sec. 7.

enced the court to impose an unreasonable sentence. He asks that we modify his sentence because of those circumstances. Second, he asserts the sentence was an abuse of discretion in light of his background. We will examine each of these contentions in turn.

I

Victor directs our attention to statements made by the prosecutor at sentencing which imply a more serious involvement of the Camp brothers in the disappearance of Fallert than simply the theft and unauthorized use of his credit cards.[2] We note, however, that no objection was interposed by Victor during the sentencing hearing when the prosecutor made the alleged improper remarks. We believe this limits our review of this issue, under the following analysis.

■ In *State v. Coutts*, 101 Idaho 110, 609 P.2d 642 (1980), the defendant had objected to statements made by the prosecutor during a sentencing hearing. On appeal, Coutts contended the prosecutor's statements were unsworn evidence, submitted in violation of two statutes, I.C. §§ 19–2515(a) and 19–2516, relating to inquiry into mitigating or aggravating circumstances at sentencing. On appeal, our Supreme Court held the two statutes were applicable only to "formal hearings" and that a "formal" hearing had not been requested for Coutts' sentencing. In the absence of a formal hearing under I.C. § 19–2516, "the court may reach its sentencing decision by receiving the unsworn formal statements presented by both sides, together with the presentence report and arguments of the respective counsel." 101 Idaho at 113, 609 P.2d at 645. Likewise, in the case before us, no request was made for a formal hearing. Thus, the district

court was free to proceed with the greater latitude allowed in a more informal type of hearing.

■ As noted, Victor did not voice any objection at the time the prosecutor's remarks were made. In *Coutts*, such an objection was raised. It is well settled that, absent a timely objection to an alleged error in the trial court, an appellate court will not consider the issue on appeal. *Major v. State*, 105 Idaho 4, 665 P.2d 703 (1983).

■ We hold that a timely objection must be posed in response to alleged improper or inflammatory remarks made at sentencing, as was done in *Coutts*, in order to preserve the issue for review on appeal. Such a procedure would allow the sentencing court to make the initial determination whether the alleged remarks are inappropriate and to indicate on the record whether the court deems the content of the remarks to be a factor considered in arriving at its sentencing decision. *See e.g. State v. Garcia*, 100 Idaho 108, 110, 594 P.2d 146 (1979), "[t]he better practice in criminal cases is to require counsel to make objections at the earliest opportunity in order that the trial court may correct possible error...." No such objection having been made in this case, we decline to review the propriety of the prosecutor's remarks or to second guess the effect those remarks may have had on the district judge. We also therefore decline to modify the sentence as suggested, solely in response to the allegedly improper remarks.

II

We turn next to the question of whether Victor's sentence was an abuse of discretion. When Victor was sentenced, the maximum penalty, on a felony charge of false

---

2. Upon motion of the state and without objection from the appellant, the record on appeal in this case was augmented to include certain documents from Teton County case no. 53, entitled *State of Idaho v. Victor Camp*. Those documents disclose that, on June 28, 1983, approximately two and a half years after his sentence in the instant case, Victor Camp pled guilty and

was sentenced on a charge of "accessory after the fact to murder in the second degree." The victim's name in that case is shown as "Fallert." Because this information was not considered by the district court below at the time Victor was sentenced on the credit card offenses we will disregard it on this appeal, but disclose it simply for the benefit of the readers of this opinion.

use of a credit card, was five years incarceration and a fine of $5000. *See* former I.C. § 18–3119; I.C. § 18–112. The imposition of an indeterminate sentence of five years was less than the maximum penalty.

In support of his claim that the court abused its sentencing discretion, Victor points to the following favorable information presented in his presentence report. He had no prior record except one traffic offense. He had received an honorable discharge from the United States Army. His work record reflected that he was a "good, steady worker." He expressed a concern for his own family and remorse for the credit card crime.

The presentence report disclosed that, at the time of their arrest, the Camp brothers were in possession of Visa, Penney's and Sears's charge cards issued to Michael Fallert. The total credit charges on these cards, after the disappearance of Fallert, was approximately $4000. In addition, the report indicated that the Camp brothers had cashed several traveler's checks belonging to Fallert, after his disappearance. Reviewing this information, the district court commented, at the sentencing hearing:

> You don't have much of a record, Mr. Camp, but the overtones of this crime involve the overtones of professionalism which is inconsistent with your prior record. The trail of charges in this case as I refer to your Presentence Investigation and also the factual matters set forth in this and the other investigation, have all the touches of professionalism and I consider that to be a criteria in this case, the sentencing criteria.

The court also entered written findings concerning whether probation, or a sentence of imprisonment for the protection of the public, would be appropriate. The court concluded that imprisonment was in order. The court found there was an undue risk that during a period of a suspended sentence or probation, Victor would commit another crime. The court also found that Victor was in need of correctional treatment which could be provided most

effectively by his commitment to an institution. Finally, the court found that imprisonment would provide appropriate punishment and deterrence to Victor Camp.

■ We have examined the entire record and have considered the sentence review criteria enunciated in *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). As noted, Victor was before the court for sentencing in a single proceeding after pleas of guilty to two separate charges of false use of a credit card. The period of confinement on the first sentence appears reasonably necessary to protect society, and to accomplish deterrence, rehabilitation or retribution. We hold that the five-year indeterminate sentence, which we have been asked to review, did not represent an abuse of discretion.

The sentence is affirmed.

SWANSTROM, J., concurs.

BURNETT, Judge, dissenting in part.

I cannot join in Part II of the court's opinion, which holds that the sentence in this case must be upheld even if we disregard Camp's subsequently admitted complicity in the victim's demise. In my view, the consecutive five-year sentences for fraudulent use of credit cards were not imposed, and neither sentence could be justified, solely upon facts presented to the district court concerning those offenses and the character of the offender.

The majority opinion implicitly acknowledges that nothing in Camp's prior background would have remotely suggested the need for a substantial prison sentence. The offenses themselves—although enigmatically described by the district judge as having "overtones of professionalism"— were limited to the use of a single set of credit cards. The instant case involved a purchase of clothing. The other credit card case arose from the purchase of a cowboy hat. The record does not fully establish the extent, if any, of Camp's participation in further transactions involving the credit cards. The record is devoid of any indication that Camp fraudulently used credit

cards from other sources or that he was engaged in a "professional" scheme involving credit cards. The presentence investigator recommended that Camp be placed in the 120-day retained jurisdiction program. Upon a record limited to these facts, I would feel constrained to hold that the five-year prison sentence imposed in this case was excessive under criteria set forth in *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982).

In reality, the district court's attention was drawn far beyond these facts. The judge referred in his oral remarks to "the other investigation." The prosecutor overtly suggested that Camp was connected with the disappearance of the credit card holder. At that time, Camp emphatically denied any such connection, stating that the cards had been obtained by his brother, who claimed to have found them in an unoccupied vehicle. The prosecutor offered no factual showing to the contrary. Of course, we now know—from an appellate record fortuitously augmented without objection—that Camp's connection with the victim's demise was closer than he earlier acknowledged. But that information was not presented to the district court. It would be improper to review a sentence upon information unavailable to the sentencing judge. The majority today disavows any reliance upon such information.

Thus, the real issue presented by this appeal is whether a sentence, which would be excessive if viewed in light of the offense committed and the character of the offender, may be imposed upon suspicion that the defendant also has committed another, larger crime. I believe the answer must be no. I do not gainsay that a sentencing judge is entitled to consider all relevant information concerning every aspect of a defendant's life. *See Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Such information may include evidence of the commission of crimes not yet charged or upon which convictions have not been obtained. *E.g., State v. Kohoutek*, 101 Idaho 698, 619 P.2d 1151 (1980). However, in the present case, the prosecutor adduced no such evidence.

He presented no facts; he merely raised suspicion.

I believe this appeal falls within the rule enunciated in *United States v. Weston*, 448 F.2d 626 (9th Cir.1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). In that case the Ninth Circuit held that where a convicted defendant protests his innocence of other offenses, the truth of any assertion that he committed such offenses must be established with some reliability. A defendant does not have the burden of proving a negative in response to a bare contention that another offense has been committed. The *Weston* court, noting the long extant rule that a sentence may not be predicated upon false information, added:

> We extend [this rule] but little in holding that a sentence cannot be predicated on information of so little value as that here involved. A rational penal system must have some concern for the probable accuracy of the information inputs in the sentencing process.

448 F.2d at 634. *Accord, United States v. Baylin*, 696 F.2d 1030 (3d Cir.1982); *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); *United States v. Woody*, 567 F.2d 1353 (5th Cir.1978), *cert. denied*, 436 U.S. 908, 98 S.Ct. 2241, 56 L.Ed.2d 406 (1978); *People v. Lee*, 391 Mich. 618, 218 N.W.2d 655 (1974); *Goodson v. State*, 654 P.2d 1006 (Nev.1982).

I conclude that the sentence imposed here was based, at least in part, upon the improper factor of bare suspicion. However, this does not mean that Camp's sentence should be reduced on appeal—or necessarily that it must be reduced at all. The appropriate remedy, when a sentence is based upon an improper factor, is to vacate the sentence and to remand for further proceedings. *See United States v. Weston, supra*. If this case were so remanded, the district court would be entitled to obtain an updated presentence report. That report presumably would disclose Camp's conviction as an accessory to murder and would

reveal the actual extent of his involvement in the victim's disappearance. The report could be considered in fashioning a sentence that is suitable to this case and reasonably related to the sentence imposed in the other credit card case. *Cf. Wasman v. United States,* —— U.S. ——, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) (intervening conviction for another crime may be considered in resentencing a defendant whose initial conviction had been set aside on appeal). The district judge might well reimpose the original five-year sentence, or he might select a different sentence in light of the clarified circumstances surrounding the offenses. But whatever the judge's ultimate decision, it would be based upon fact rather than upon mere suspicion. Our criminal justice system demands no less.