Raymond LEEDS et al., Appellants,

v.

Rocky WATSON et al., Appellees.

Nos. 79–4073, 79–4074.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 1980.

Decided Sept. 24, 1980.

William C. Kirsch, Moscow, Idaho, Dan Stormer, Spokane, Wash., argued for appellants.

Cameron L. Phillips, Coeur d'Alene, Idaho, argued for appellees; Linda E. Perle, Washington, D.C., on brief.

Before SNEED and ANDERSON, Circuit Judges, and D. WILLIAMS, District Judge.*

DAVID W. WILLIAMS, District Judge.

Kootenai County Jail is a converted house in Coeur d'Alene, Idaho, which is used as a facility to house pretrial detainees, convicted persons, and juveniles. Appellants are prisoners who seek relief in this class action brought under 42 USC § 1983. We must decide whether the approval of defendants' proposed plan for future use of the jail was proper; whether the trial judge erred when he found that no violation of prisoners' constitutional right of access to the courts had been shown; and whether attorney fees should have been allowed appellants.

Prior to the trial, the parties entered into a Consent Agreement resolving issues of prisoners' mail, and the providing of medical services, basic hygienic materials, and legal pads and pens. After a two–day trial on remaining issues, the Court made Findings of Fact and Conclusions of Law which determined the jail to be a fire hazard, criticized food service facilities, and declared the facility to be overcrowded, unsanitary, and inadequate for the confinement of prisoners for other than very short periods of time. The prisoners has urged that since there was no law library in the jail they were deprived of a means of legal research that would give them access to the courts, but the court found against them on this point and on their application for attorney's fees.

After entering his initial Order the trial judge required the defendants to prepare and file a proposed plan for the correction of the conditions which were found subject to criticism. Defendants filed such a plan and thereafter the plaintiffs filed written objections thereto, calling the plan totally inadequate and arguing that the jail should no longer be used for confinement purposes. Without holding a hearing, the court approved the plan but continued an earlier order limiting the time most prisoners could be housed in the facility. Our ability to review on appeal the appropriateness of the approval of the plan is considerably hampered by the fact that no evidentiary hearing was held on the objections and thus the record is incomplete and inadequate.

## FIRE HAZARD PROBLEM

The record before us fails to reveal whether the serious deficiency of fire hazard outlined by the appellants has been remedied, as there is room for the belief that the second floor of the facility could still be a death trap in the event of fire. An interior stairway leads to this floor, but if it were to be blocked by fire, the only way to evacuate that floor of detainees would be for a guard to run from the lower floor to an outside fire escape and unlock and unbolt it from the outside; then, a steel locked door must be opened to gain access to the cell area. The continued use of this area as a holding place might easily lead to a great loss of lives. The report promises only cosmetic improvements and goes no distance in making an in–depth remedial proposal that would be a viable alternative to complete abandonment of the facility. Remand for further hearing on the adequacy of this part of the plan is required.

There is still some possibility, moreover, that persons will be housed "in grave emergencies" in a locked cell area that has no fire exit. This is a serious deficiency in the plant. The infrequent use of such a dangerous room does not lessen the hazard it

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

presents to the lives of persons incarcerated there. If the problem still exists, the prison should be required to either provide an exit or desist from using the room.

## FOOD SERVICE

Appellants have asserted that abominable conditions exist in the area where food is prepared. The plan merely proposes to remedy this by eliminating food preparation and feeding inmates warmed frozen TV dinners. Query whether the heating of those dinners in this environment, or the boring regimen of a frozen meal, is an acceptable remedy for this deficiency?

Two questions remain unanswered by the record as to the adequacy of this solution. First, it is unclear whether heating the food in the same kitchen, littered with rat droppings, frequented by mice in the wintertime (Appellee's Brief, p. 9), and traversed by a dripping overhead sewage line and clean-out, still presents a health hazard. Second, it is not clear how many prisoners will be subjected to this regimen for substantially longer than 48 hours, or whether this diet is unsatisfactory for them. Under appellee's plan, 5 classes of prisoners may still be confined in the prison longer than 48 hours (RP: 608), although the record does not indicate how much longer they tend to be incarcerated.

## OVERCROWDING

The trial judge recognized the fact that the jail was operating at an overcapacity and he enjoined the confining of more than 14 prisoners at once or for more than 48 hours, subject to a list of exceptions. There is nothing in the plan to assure that the 5 exceptions to the 48–hour rule in the court's Order are not being used in a manner that will permit a total disregard of the meaning and intent of the 48–hour limitation rule. Moreover, the record before us does not reflect whether any of the promised improvements to health and sanitation problems have been implemented.

## ACCESS TO THE COURTS

At trial the evidence showed that Kootenai Jail has no law library but is located a short distance from the county courthouse which does contain material for prisoner research. However, a prisoner who wished to use this library must get an order of court permitting such use and he must be accompanied by a guard to the small courthouse library. It is not surprising to learn that no effort is made to inform inmates of the availability of legal research material or how to go about obtaining a court order permitting its use. The trial judge found that there was no violation of the prisoners' constitutional rights of access to the courts. We disagree. "(I)t is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." *Johnson v. Avery*, 393 U.S. 483, 485, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969). There can be no doubt of the right of a prisoner to have meaningful access to the courts. *Ross v. Moffitt*, 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974). Both appellants and appellees cite *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); appellants for the proposition that prisoners have a constitutional right of access to the courts (p. 825, 97 S.Ct. p. 1496), and appellees for the point that this right is met by either the providing of a law library for prisoner use *or* adequate assistance from persons trained in the law (p. 828, 97 S.Ct. p. 1498). Appellees further point to the availability of Public Defenders as satisfaction of the *Bounds* alternative requirement. However, the parties stipulated (Tr. 417) that Idaho Legal Aid Services does not have the staff to provide legal representation to inmates at the Kootenai jail in all the cases in which they are requested to do so, but has represented inmates three times in the past four years. "Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974).

We reverse the finding that there was no violation of the prisoners' constitutional right of access to the courts. On remand, a determination of the adequacy of legal representation to inmates, or in the alternative, the provision of an adequate law library and notice of its availability should be explored.

## ATTORNEY FEES

 The Civil Rights Attorney Fees Award Act of 1976 (42 U.S.C. Section 1988) evidences Congress' strong concerns for the reasonable compensation of attorneys in civil rights actions. Indeed, the Act was designed to provide for awards of attorney fees in "private attorney general" types of claims in order to encourage the private enforcement of civil rights laws and to fully vindicate the federal rights involved. Although the Act permits the court to exercise its discretion as to whether to award attorney fees, such fees should be awarded to a litigant who furthers the interest of a significant class of persons by effectuating congressional policies of high priority. *Mid–Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 37 (2d. Cir. 1978), quoting S. Rep. No. 94–1011, reprinted in U.S. Code, Cong. and Admin. News, pp. 5908–5911 (1976). The successful plaintiff in this type of claim, then, should ordinarily recover attorney fees unless special circumstances would render such an award unjust. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *Sargeant v. Sharp*, 579 F.2d 645, 647 (1st Cir. 1978). Plaintiffs' successful class action in the present case was brought solely for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. Thus, an award of legal fees in the discretion of the district court would have been within both the letter and spirit of § 1988.

The court below, however, determined that no costs should be allowed. Subsequent to that decision, plaintiffs filed a Motion to Alter or Amend Judgment and For Attorney Fees. The district court denied the Motion, stating:

"(T)he allowance of costs for attorneys' fees is, in the present view of the Court not appropriate. I find myself distressed with one tax supported agency, in effect, bringing suit against another and then seeking this form of recompensation." (Order Denying Motion to Alter or Amend, III, R. 572–73, October 31, 1978)

The fact that plaintiffs' counsel is a legal services organization supported in part by public funds is irrelevant in determining whether an award for attorney fees is proper. *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980); *Brandenburger v. Thompson*, 494 F.2d 885, 889 (9th Cir. 1974).

Plaintiffs were the prevailing party here and reasonable attorney fees under § 1988 were denied after the district court inappropriately considered the nature of plaintiffs' counsel. We therefore reverse and remand to that court for the purpose of determining the appropriate counsel fee to be awarded, subsequent to an evidentiary hearing.