684 P.2d 303

Robert BARROWS, George Bailey, Carol Bender, Dewayne Wheeler, Mike Brower, Glen Sellers, Teresa Bettencourt, Andy Dela Rosa, and Linda Cutler, Plaintiffs-Appellants,

v.

The STATE of Idaho and the Idaho State Department of Health and Welfare; Les Purce, individually and in his official capacity as Director of the Idaho State Department of Health and Welfare; John Morgan, George W. Bachik and Dr. Carroll M. Elmore, individually and in their official capacities as employees and agents of the Idaho State Department of Health and Welfare; Their Successors in Offices, Titles and Interests, Defendants-Respondents.

No. 14915.

Supreme Court of Idaho.

July 19, 1984.

L. Charles Johnson, III, Pocatello, for plaintiffs-appellants.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., James F. Wickham, Deputy Atty. Gen., Boise, for defendants-respondents.

SHEPARD, Justice.

This is an action instituted on behalf of mentally ill patients, most of whom are confined at the State Hospital South in Blackfoot, Idaho. The crux of the complaint was: that the patients should be placed in less restrictive community-based treatment facilities; that if such facilities are not available, the State should be compelled to build such facilities; and that the patients are entitled to semi-private rooms for sleeping and to day rooms containing not more than eight persons. Partial summary judgment was granted to the State and the issues certified on appeal, I.R.C.P. 54(b), were:

> "(a) Whether plaintiffs Barrows, Bailey, Wheeler, Bettencourt, Dela Rosa, and Cutler, who are mentally ill but not developmentally disabled, have the right, based on federal and state constitutional and/or statutory law to community based treatment facilities that are less restrictive of personal liberty than a psychiatric hospital like State Hospital South, if such facilities do not exist; (b) Whether plaintiffs Barrows, Bailey, Wheeler, Bettencourt, Dela Rosa, and Cutler, who are mentally ill but not developmentally disabled, have property

and liberty interests secured under federal and state law to double occupancy sleeping rooms and day rooms with no more than eight (8) mentally disabled individuals; and whether there is some upper limit on the number of mentally disabled persons that may be placed in each day room and sleeping room at a psychiatric facility such as State Hospital South."

We affirm the decision of the trial court as to the issues certified for appeal to this Court.

State Hospital South was built in the 1930's and houses many mentally ill patients in a dormitory setting, which was state-of-the-art at the time of construction. The facility is fully licensed by the State and was recently satisfactorily inspected for questions of space allotments per patient, environment, cleanliness, and diet. The institution is public and is funded and operated by the State of Idaho. State budget constraints required the recent closure of one building with the consequent relocation of patients to other buildings. That relocation permitted a reduction in staff, but increased supervision of patients. All facts before this Court show that the facilities are not overcrowded as such and that the hospital was at the time of trial in the process of building new units which will provide additional space per patient. At the time of trial, males and females were segregated by sleeping rooms, with 13 to 17 persons per room. Much of the daytime hours are spent in day rooms containing up to 40 persons. The only evidence regarding treatment is that all patients are receiving some type of therapy.[1]

---

1. It is uncontradicted that the six plaintiffs who have issues certified for appeal are not developmentally disabled and may be described as follows: (1) Robert Barrows was referred to a community-based residential facility in 1981. However, his clinical condition deteriorated and he then returned to State Hospital South; subsequently, community residential facilities have declined to admit him because of his behavior, especially theft. (2) George Bailey was committed pursuant to I.C. § 18–214 (repealed 1982; for present law, see I.C. § 18–207) (acquitted of

a crime due to mental disease or defect). Two applications for his discharge or conditional release have been denied. (3) Dewayne Wheeler was involuntarily committed under I.C. § 66–329. In December 1981, he was discharged from State Hospital South to a community-based facility, but was readmitted following incidents of substance abuse creating a sense of risk of self injury. He has refused to apply for social security benefits which would facilitate his placement in a community-based facility. (4) Teresa Bettencourt was a voluntary patient

The questions presented on this appeal may be reduced to the following: (1) whether the property, liberty or privacy interests of the patients secured under federal and state law have been violated by the present sleeping and day room arrangements at State Hospital South for these patients; and (2) whether the patients have rights based on federal and state constitutional and/or statutory law to community-based treatment facilities less restrictive of personal liberty than the conditions in State Hospital South, even though such facilities may not presently exist.

■ We note first that the record contains no facts indicating that the conditions of confinement at State Hospital South are in any way harmful to any of the patients. Also, the record contains no facts indicating that the confinement of the patients is in any way in violation of state or federally promulgated standards. To the contrary, the record does show a recent inspection and approval by the state agency charged with licensing the hospital. Hence, the only question of space requirements is presented in the abstract as to whether the patients have a per se right to sleep in a room with no more than one other occupant and to spend time in a day room containing not more than eight occupants. We, therefore, are asked to transform constitutional guidelines into a rigid schedule specifying the largest number of mental patients who may sleep in a room or spend time in a day room in a state mental hospital facility.

As a general matter, the United States Supreme Court in *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), has held that "a State is under no constitutional duty to provide substantive services for those within its border." However, those involuntarily committed to mental institutions are entitled to humane care and treatment and to safety, adequate food, shelter, clothing, and medical care. We are presented with no facts in this

record indicating the mental patients are being denied any of these basic rights.

Appellants next draw our attention to imprisonment cases, in contending that the conditions of their confinement constitute cruel and unusual punishment. In *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), the Court rejected the contention that prison cells each containing two inmates and comprising 63 square feet of space were so crowded as to constitute cruel and unusual punishment. The facts in this record indicate that each patient at State Hospital South has at least 80 square feet of living space in his or her sleeping quarters. Hence, we reject the allegation of cruel and unusual punishment.

It is next asserted that appellants' constitutional rights of privacy require semi-private sleeping rooms and day rooms containing no more than eight patients. The United States Supreme Court has expanded the interests which are protected by the right to privacy, *e.g., Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (important life decisions, here, the decision to marry); *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (important decision, *i.e.*, abortion); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (right to be free from unwarranted governmental intrusion as to telephone conversation in a telephone booth); *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (free thinking and privacy as to obscene material); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (exclusionary rule in state courts); *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (bodily integrity); *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) (private documents).

who has been discharged from the hospital. (5) Andy Dela Rosa was discharged from State Hospital South to a community-based facility, but was readmitted to State Hospital South following incidents of assaultive behavior caused by

his failure to participate in community treatment programs. (6) Linda Cutler was involuntarily committed under I.C. § 66–329, but has subsequently been transferred to a community-based facility.

However, we find nothing in any of the decisions and the appellants have suggested nothing which indicates how those privacy decisions can be interpreted as structuring guidelines for application in the instant case.

Although *Eckerhart v. Hensley*, 475 F.Supp. 908 (W.D.Mo.1979), is asserted as being persuasive, we do not find it helpful. That case dealt with "privacy rights" of mentally ill patients housed in a state hospital dormitory, but it contained no analysis of such privacy rights, and the opinion is unclear regarding upon what basis the privacy violation was found. If the holding of *Eckerhart* is deemed to require semi-private rooms, as is argued in the instant case, it is clearly without precedent, and we reject such a holding as being unpersuasive.

■ It is also contended on behalf of appellants that their right to equal protection of the laws has been violated, since these appellants are housed in a dormitory-type setting, while other mentally ill patients are housed in community-based facilities which sleep only two or four to a room. The guarantee of equal protection is that all persons under like circumstances and conditions shall be treated alike, *Hartford Co. v. Harrison*, 301 U.S. 459, 57 S.Ct. 838, 81 L.Ed. 1223 (1937), and that the differences in treatment for mentally ill persons must be based upon rational grounds, *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972).

■ The record before us indicates that community-based facilities are built with private funds. Such facilities were built many years after State Hospital South. *See Woe v. Cuomo*, 559 F.Supp. 1158, 1166 (E.D.N.Y.1983), holding that the State is not required to expend the same dollar amount as does the private sector on the care and treatment facilities for the mentally ill.

Here, the record indicates that the dormitory setting of State Hospital South allows for a great deal of supervision, while those persons released to community-based facilities require less supervision. The record indicates that the respondent State has met the rational basis test justifying a difference in treatment for mentally ill patients housed in community-based facilities as contrasted with those housed in state institutions such as State Hospital South. The record here does not indicate that any of the appellants have been improperly refused placement in community-based facilities. On the contrary, the record indicates clearly that some of the appellants have been placed in community-based facilities, and some of those have been unable to sustain the transition.

Other contentions are raised on behalf of appellants, but those issues have not been certified for appeal and will not be considered.

The order of the district court is affirmed. No costs and no attorney's fees on appeal.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

Although the Court's opinion reads well, I cannot join the majority's conclusion that conditions at State Hospital South are not harmful to patients, believing the record reads to the contrary. The majority states: "We note first that the record contains no facts indicating that the conditions of confinement at State Hospital South are in any way harmful to any of the patients." P. 305. The following is a list of the conditions which the majority finds are "not harmful": patients are forced to sleep in dormitory style rooms containing up to 17 other patients; allotted sleeping space is 80 square feet; many of the patients spend the days in rooms with up to 40 other mentally disabled patients; the hospital is admittedly understaffed by ten percent causing the closure of one building which forced patients to move to the remaining

buildings worsening the overcrowded conditions; patient security has been reduced; and treatment for some individuals does not exist. (R., Vol. 2, pp. 6, 22; Vol. 1, pp. 19, 24, 28, 51, 60; Appellant's Brief, pp. 8–11.)

How these conditions are not in any way harmful to the patients at State Hospital South escapes the imagination. It would be more realistic for the Court to admit these conditions are harmful, but tolerable, rather than condone them as "not harmful" to the patients.

The case before us today is reminiscent of this Court's decision in *Mallery v. Lewis*, 106 Idaho 227, 678 P.2d 19 (1983), in which the conditions of the Canyon County jail were reviewed and determined to be inadequate. The majority found the overcrowded conditions at the facility for adult pretrial detainees failed to meet constitutional minimum requirements. *Id.* 678 P.2d at 23. Yet the majority refused to order the district court to enforce what it *wished* to be done, and refused to order the district court to retain jurisdiction to insure the jail did not receive any pre-trial inmates which it could not accommodate within constitutional bounds. *Id.* 678 P.2d at 30. The result of this Court's failure to act in a meaningful way with regard to the jail conditions was to shift the issue to the federal judiciary, thereby abdicating the Idaho judiciary's responsibility with regard to jail conditions in the state. *Id.* 678 P.2d at 30 (Bistline, J., dissenting).

An analogous result is reached today in the majority's decision that the conditions at State Hospital South are not harmful to the patients. The failure of the majority of this Court to provide a meaningful review of the constitutional requirements for living conditions in state facilities only furthers the abdication of judicial responsibility begun in *Mallery*. Persons housed in state institutions will have to continue to survive in subhuman conditions hoping the federal judiciary will provide the necessary constitutional review.